WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re ) <br> ) <br> BILL JOHNSON'S RESTAURANTS, INC., ) <br> ) <br> Debtor(s), ) <br> _____ ) <br> ) <br> BILL JOHNSON'S RESTAURANTS, INC., ) <br> et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> PLATTNER, SCHNEIDMAN, SCHNEIDER, ) <br> JEFFRIES & PLATTNER, P.C., et al., ) <br> ) <br> Defendants. ) <br> _____ ) | No. 2:14-cv-00872-HRH <br><br> Bankruptcy Court <br> No. 2:11-bk-22441-PS <br><br> Adversary Proc. <br> No. 2:13-ap-00526-PS |

O R D E R

Motion for Withdrawal of Reference

The Harmon and Plattner defendants move for an order withdrawing the reference of this adversary proceeding (No. 2:13-ap-00526-PS) from the bankruptcy court.[1]  This motion is opposed.[2]  Oral argument was requested but is not deemed necessary.

---

[1] Docket No. 19.

[2] Docket No. 20.

-1-

Background

On August 4, 2011, Bill Johnson's Restaurants, Inc. (BJR) filed a petition for bankruptcy protection under Chapter 11 (the Administrative Case). The Plan of Reorganization was confirmed on May 1, 2013 by Judge Sarah Sharer Curley. Judge Curley also oversaw numerous disputes related to administrative expenses. As part of the Plan of Reorganization, the CT Trust was created for the benefit of creditors and shareholders of the estate.

On May 3, 2013, the complaint in the adversary proceeding was filed. In that complaint, BJR alleged a variety of claims against the Harmon defendants, who were BJR's CPA, and the Plattner defendants, who were BJR's legal counsel, arising out of their involvement in the administration and termination of BJR's Pension Plan. More specifically, BJR asserted professional negligence, breach of fiduciary duty, aiding and abetting, and conspiracy claims against the Harmon and Plattner defendants. In the adversary proceeding, Judge Curley decided a motion to intervene, two motions to dismiss, a motion to consolidate, and a motion to stay.

On May 1, 2014, the Administrative Case and the adversary proceeding were reassigned to Judge Paul Sala because Judge Curley was retiring. Since the Administrative Case was reassigned to him, Judge Sala has approved a number of stipulated settlements. Since the adversary proceeding was reassigned to him, Judge Sala has approved several stipulated settlements, a stipulation to file a Third Amended Complaint, stipulated motions to modify the scheduling order, and a discovery motion.

On May 27, 2014, this court denied a motion for withdrawal of reference brought by the Plattner defendants and joined in by the Harmon defendants.[3] The court found that

> in light of the bankruptcy court's prior experience with this case, as well as the fact that the adversary proceeding is conceded to involve a mixture of core and non-core issues, ... it will in this case be more efficient for the adversary proceeding[] to continue before the bankruptcy court for discovery, preliminary motion practice, and the sorting of core and non-core issues.[4]

The court, however, gave defendants leave to renew their motion for withdrawal of reference "once dispositive motions have been briefed" but prior to those motions being reviewed by the bankruptcy court.[5]

In the Third Amended Complaint in the adversary proceeding, plaintiffs BJR and the CT Trust assert claims of professional negligence, violation of the Trust Fund Doctrine, aiding and abetting, and civil conspiracy against the Harmon and Plattner defendants. Plaintiffs have filed a motion for partial summary judgment asking the court to find that defendants waived their right to object to the amount of the claims filed by creditors of the estate, and defendants have each filed a motion for summary judgment contending that plaintiffs have failed to meet their burden of proof as to each of their claims. These summary judgment motions are fully briefed. The bankruptcy court had scheduled oral argument on these motions in December, but argument has now been continued until early January, pending the resolution of the instant motion.

---

[3]Docket No. 13.

[4]Id. at 2.

[5]Id. at 3.

The Harmon and Plattner defendants now renew their motion for an order withdrawing the reference of the adversary proceeding from the bankruptcy court.

## Discussion

Section 157(d) of Title 28 of the United States Code "governs the district court's authority to withdraw the reference...." <u>Security Farms v. Int'l Broth. of Teamsters, Chauffers, Warehousemen & Helpers</u>, 124 F.3d 999, 1008 (9th Cir. 1997). The court may order a withdrawal "'<u>for</u> <u>cause</u> <u>shown</u>.'" <u>Id.</u> (quoting 28 U.S.C. § 157(d) (emphasis added)). "In determining whether cause exists, a district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." <u>Id.</u>

### judicial efficiency

The Harmon and Plattner defendants argue that withdrawal would be an efficient use of judicial resources because the claims against them are non-core. "[E]fficiency [is] enhanced by withdrawing the reference [if] non-core issues predominate" because "a bankruptcy court's determinations on non-core matters are subject to de novo review by the district court..." <u>Id.</u> at 1008-09.

> "In noncore matters, the bankruptcy court acts as an adjunct to the district court, in a fashion similar to that of a magistrate or special master. In noncore matters, the bankruptcy court may not enter final judgments without the consent of the parties, and its findings of fact and conclusions of law in noncore matters are subject to de novo review by the district court...."

<ins>In re Harris Pine Mills</ins>, 44 F.3d 1431, 1436 (9th Cir. 1995) (quoting <ins>Taxel v. Electronic Sports Research (In re Cinematronics)</ins>, 916 F.2d 1444, 1449 (9th Cir. 1990)). Thus "unnecessary costs could be avoided by a single proceeding in the district court" if non-core claims predominate. <ins>Security Farms</ins>, 124 F.3d at 1009. Because the claims asserted against them are non-core, the Harmon and Plattner defendants argue that it would be inefficient to have the bankruptcy court decide the three pending summary judgment motions, which involve dozens of pages of briefing and hundreds of pages of exhibits, only to have this court then conduct a <ins>de novo</ins> review.

"The applicable test for what constitutes a non-core matter is whether the right invoked is not one created by federal bankruptcy law and is one which could exist outside the bankruptcy court. If the answer to each of these questions is yes, then the claim is designated as non-core." <ins>In re Oakview Terrace</ins>, Case No. C–93–2446–MHP, 1994 WL 28031, at *2 (N.D. Cal. Jan. 25, 1994).

As set out above, plaintiffs have asserted professional negligence, violation of the Trust Fund Doctrine, aiding and abetting, and civil conspiracy claims against the Harmon and Plattner defendants. Plaintiffs argue that these claims involve core issues. Section 157(b)(2) contains a list of core proceedings, including a "catch all" provision that states that "matters concerning the administration of the estate" are core. 28 U.S.C. § 157(b)(2)(A). Plaintiffs argue that their claims against the Harmon and Plattner defendants fall within this "catch all" provision because their claims involve the advice that these defendants gave to BJR regarding certain asset transfers, transfers that triggered BJR's bankruptcy and thus impacted the bankruptcy estate.

Plaintiffs insist that their claims against the Harmon and Plattner defendants involve the solvency of BJR and the claims allowance process during the course of the Administrative Case.

While plaintiffs' claims against the Harmon and Plattner defendants may involve some issues of bankruptcy law, they are state law claims that could exist outside of bankruptcy court and thus are non-core. Other courts have held that pre-petition professional negligence or malpractice claims are non-core. See, e.g., In re Joseph DelGreco & Co., Case No. 10 CV 6422(NRB), 2011 WL 350281, at *3 (S.D.N.Y. Jan. 26, 2011) ("It is likewise clear that a claim alleging pre-petition malpractice is a non-core claim"); In re FMI Forwarding Co., Case Nos. 00 B 41815(CB), 01 Civ. 9462(DAB), 01–02992(CB), 2004 WL 1348956, at *4 (S.D.N.Y. June 16, 2004) ("state-law professional malpractice causes of action arising out of Marcus' business valuation services performed prior to and independent of FMI's petition for bankruptcy" are non-core). Similarly, courts have found aiding and abetting and civil conspiracy claims that are based on pre-petition conduct to be non-core. See, e.g., In re Freeway Foods of Greensboro, Inc., 449 B.R. 860, 876 (Bkrtcy. M.D.N.C. 2011) (civil conspiracy claim was non-core); In re Systems Engineering & Energy Mgmt. Assocs., Inc., 252 B.R. 635, 648 (Bkrtcy. E.D.Va. 2000) (same); Ritchie Capital Mgmt., L.L.C. v. Opportunity Finance, L.L.C., 511 B.R. 603, 610 (D. Minn. 2014) (aiding and abetting claim non-core); In re O'Brien, 414 B.R. 92, 98 (S.D. W. Va. 2009) (aiding and abetting a pre-petition wrongful act non-core).

But plaintiffs argue that even if non-core issues predominate here, judicial efficiency would still be served by allowing the bankruptcy court to retain pre-trial jurisdiction because

the bankruptcy court has unique knowledge of bankruptcy law and familiarity with the actions before it. Plaintiffs argue that resolution of their claims against the Harmon and Plattner defendants will involve questions related to BJR's solvency and the claims allowance process, issues that a bankruptcy court deals with on a regular basis. Plaintiffs also argue that Judge Sala, having presided over the Administrative Case and the adversary proceeding for two years, is familiar with this case and thus it would be more efficient for him to make findings and conclusions on the summary judgment motions for this court to review. Plaintiffs argue that such findings and conclusions would allow this court to narrow the focus of disputed issues before entering a final ruling.

The bankruptcy court's familiarity with the case as it currently stands will not make much of a difference in deciding the motions for summary judgment. This court will have to become familiar with the issues raised in the adversary proceeding, including any issues of bankruptcy law, at some point. Judicial efficiency would not be served by having the bankruptcy court decide what are primarily state law issues and then having this court conduct a de novo review of the same issues. Rather, judicial efficiency will be served by withdrawing the reference.

### cost and delay

Plaintiffs argue that having the bankruptcy court review and summarize the facts and issues first should be more efficient, especially considering the heavy docket that the District of Arizona bears. Plaintiffs insist that costs would be reduced by having the matter remain in the bankruptcy court, where the discovery process is completed and the summary judgment

motions are pending. Plaintiffs also argue that there is likely to be more delay if the reference is withdrawn as this court will need additional time to become familiar with the claims and issues.

However, withdrawing the reference will result in less delay and be more economical for the parties because it will mean that there will be a single proceeding in this court. As for plaintiffs' concern about this court's docket, as a senior judge sitting by designation in the District of Arizona, the undersigned probably has a lighter case load than the bankruptcy judge and thus will be able to resolve the pending motions for summary judgment in a much more timely manner. This factor weighs in favor of withdrawing the reference.

### bankruptcy administration

Plaintiffs argue that their claims are intertwined with concepts of bankruptcy law, particularly since the confirmation process authorized the CT Trust to seek and prosecute causes of actions which would return assets to the estate for the benefit of creditors. Plaintiffs insist that having the bankruptcy court decide the summary judgment motions in the first instance would ensure uniformity in the administration of bankruptcy estate.

To the extent that any bankruptcy issues are involved in the motions for summary judgment, those issues would be tangential to the professional liability claims that are at the heart of the adversary proceeding, claims that are based on conduct that occurred prior to BJR filing for bankruptcy protection. This factor weighs in favor of withdrawing the reference.

<u>forum shopping</u>

The Harmon and Plattner defendants argue that there is no forum shopping going on here because they have a right to a jury trial on the claims being asserted against them, and absent their consent to a trial in bankruptcy court, the parties will have to try this matter in this court. Plaintiffs argue, however, that denying the motion to withdraw the reference will not impact defendants' right to a jury trial because the Harmon and Plattner defendants will be able to have a jury trial before this court regardless of the outcome of the instant motion.  But, as plaintiffs themselves point out, "where a jury trial is required and the parties refuse to consent to bankruptcy jurisdiction, withdrawal of the case to the district court is appropriate." <u>In re Cinematronics, Inc.</u>, 916 F.2d at 1451.  Thus, this factor weighs in favor of withdrawing the reference.

<u>Conclusion</u>

Based on the foregoing, the Harmon and Plattner defendants' motion for withdrawal of reference[6] is granted.

DATED this 30th day of December, 2016.

/s/ H. Russel Holland
United States District Judge

---

[6]Docket No. 19.